IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal Nos. 15-211 |
| | ) | 19-053 |
| | ) | |
| | ) | |
| DAVID LINDER, | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Before the Court is Defendant's First Motion for Release/Reduced Sentence pursuant to the CARES Act or the First Step Act. Defendant filed a *pro se* Motion for Release/Reduced Sentence at docket number 15-cr-211, at ECF 55; and, he filed the same *pro se* Motion for Release/Reduced Sentence at docket number 19-cr-53, at ECF 45.

Shortly after filing same, this Court appointed counsel for Defendant and ordered counsel to review and undertake representation of the defendant pursuant to the Administrative Orders at Misc. Nos. 19-mc-103 and 20-mc-629. The Court further ordered that Defendant's counsel had to file any counseled filing on behalf of Defendant by May 22, 2020, and if no counseled filing would be forthcoming, Defendant's counsel was to advise the Court by May 22, 2020.[1]

In response to these Orders, Defendant's counsel filed an "Emergency Motion to Modify Judgment on Probation/Supervised Release Violation" in case number 15-cr-211 at ECF 57.

---

1. See Order of Court entered in case number 15-cr-211 at ECF 56, and in case number 19-cr-53 at ECF 46.

Counsel for Defendant simultaneously filed an "Emergency Motion to Modify Judgment" in case number 19-cr-053 at ECF 47. [2]

This Court ordered the Government, counsel for Defendant, and the Probation Office to confer regarding Defendant's Motions to Reduce Sentence/Modify Judgment in each of the two cases (case no. 15-cr-211at ECF 58, and case no. 19-cr-053 at ECF 48).   The Court's Orders also required the parties to provide a status report on or before May 20, 2020, regarding any potential resolution.   If no resolution could be reached, the Court's Orders indicated that the Government would have to respond to Defendant's Motions on before May 26, 2020.  Additionally, the Orders required the United States Attorney's Office to "make all reasonable efforts to promptly notify any victim(s) of the filing of Defendant's Motions, and gather the comments/objections/support of any victim(s) to the relief requested by Defendant in said

---

2. In case number 15-cr-211, Defendant's counsel filed numerous documents – all of which appear to be exhibits to the Emergency Motion (ECF 57) filed on that docket (case no. 15-cr-211).   Presumably due to all of the confusing filings, Defendant's counsel filed a Motion to withdraw the Emergency Motion filed at ECF 57 (see ECF 69) but immediately filed a "Motion for Release/Reduced Sentence pursuant to CARES and/or First Step Act" at ECF 71 which was the same Motion as the one filed at ECF 57 but this time all of the exhibits were attached.   In the interim, between filing ECF 57 and ECF 71, the Government filed its Response to the Motion filed at ECF 57.   See ECF 68.   Because the document filed at ECF 57 is identical to the document filed at ECF 71 (except for the fact that ECF 71 has the exhibits attached) the Government's Response to ECF 57 – ECF 68 – will be considered as the Response to Motion (with exhibits) filed at ECF 71.

Similarly, in case number 19-cr-053, Defendant's counsel filed the counseled Emergency Motion at ECF 47, but after many additional filings on the docket, filed a Motion to withdraw the Emergency Motion filed at ECF 47 (see ECF 59), then re-filed a Motion for Release/Reduced Sentence pursuant to CARES and/or First Step Act" at ECF 61 which was the same Motion as the one filed at ECF 47 except that all of the exhibits were attached.   In the interim, between filing ECF 47 and ECF 61, the Government filed its Response to the Motion filed at ECF 47.   See ECF 58.   Because the document filed at ECF 47 is identical to the document filed at ECF 61 (except for the fact that ECF 61 has the exhibits attached) the Government's Response to ECF 47 – ECF 58 – will be considered as the Response to Motion (with exhibits) filed at ECF 61.

Motions, and place same as an exhibit to the status report and/or the response of the Government." Id.

Following the filing of a status report in each of the cases, the parties made it clear that no resolution could be reached, and the Government filed Responses to Defendant's Motions. See case no. 15-cr-211 at ECF 68 and case no. 19-cr-053 at ECF 58. Defendant's counsel filed Replies to the Responses, making the matters ripe for disposition. See case no. 15-cr-211 at ECF 74 and case no. 19-cr-053 at ECF 62. After careful consideration, and for the reasons that follow, Defendant's Motion will be DENIED.

**I. Procedural History**

On October 13, 2015, a two-count Indictment was filed in the Western District of Pennsylvania at docket number 15-cr-211 against Defendant, David Linder, charging him at Count 1 with Bank Fraud in violation of 18 U.S.C. § 1344(2) occurring on April through May 2014 and at Count 2 with Identity Theft, in violation of 18 U.S.C. § 1028(a)(7) and 1028(b)(1)(D), occurring from June through September 2015.

Pursuant to a plea agreement with the Government, Defendant pled guilty on April 18, 2016, to Count 1 of the Indictment and accepted responsibility for the conduct charged in Count 2. The plea agreement also contained a stipulated sentence pursuant to Rule 11(c)(1)(C), wherein the parties agreed that the appropriate sentence in this case was a term of imprisonment of 3 years (36 months), to be followed by a term of supervised release of 5 years. On May 7, 2018, Defendant was released from Bureau of Prisons' custody and began his 5-year term of supervised release.

On February 19, 2019, while serving his term of supervised release, a grand jury seated in the Western District of Pennsylvania returned an indictment at docket number 19-cr-053 charging Defendant with Bank Fraud, from in and around August 2018 to in and around November 2018, in violation of 18 U.S.C. § 1344(1).  On September 11, 2019, this Court sentenced Defendant to a 48-month term of imprisonment, followed by a 5-year term of supervised release.

Defendant is currently being housed in the Elkton Federal Correction Institution, which has suffered an outbreak of Covid-19.  On April 22, 2020, the United States District Court for the Northern District of Ohio[3] issued an opinion at case number 20-cv-794 stating in relevant part:

> The Court orders the Respondents to identify, within one (1) day all members of the subclass as defined in this Order.   Respondents must identify in the list each subclass member's sentencing court and the case number of their underlying criminal conviction.
>
> Following identification, the Court orders Respondents to evaluate each subclass member's eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non- transfer furlough within two (2) weeks.
>
> In undertaking this evaluation, Respondents will prioritize the review by the medical threat level. For example, older inmates with heart, pulmonary, diabetes or immunity risks should receive review priority over subclass members who are younger.
>
> Subclass members who are ineligible for compassionate release, home release, or parole or community supervision must be transferred to another BOP facility where appropriate measures, such as testing and single-cell placement, or social distancing, may be accomplished.   In transferring subclass members, Respondents must continue to comply with BOP policy of quarantining inmates for 14 days prior to transfer out of Elkton.

---

3. Elkton FCI sits within the geographical region of, and is subject to the jurisdiction of the United States District Court for the Northern District of Ohio.

>Any subclass members transferred out of Elkton may not be returned to the facility until the threat of the virus is abated or until a vaccine is available and Elkton obtains sufficient vaccine supplies to vaccinate its population, whichever occurs first.
>
>IT IS SO ORDERED.

ECF 61-3.

### I. Standard of Review

Title 18 – as amended by the First Step Act of 2018 – allows this Court to reduce a term of imprisonment based on "extraordinary and compelling" circumstances, but only:

>upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]

18 U.S.C. § 3582(c)(1)(A).

### II. Discussion

Defendant's Motion claims that the Elkton BOP is largely ignoring the Order issued by the District Court for the Northern District of Ohio and urges this Court to grant his Motion for Release/Reduced Sentence. Defendant contends that his diabetic condition will cause him to have a worse outcome than other non-diabetic people should he contract Covid-19 while incarcerated in Elkton FCI. ECF 61. Simply stated, he argues that because of his diabetic medical condition, incarceration at this time in Elkton (or anywhere) could be detrimental to his health. Id. Defendant does not claim that he has contracted the coronavirus which leads to Covid-19.

The Government opposes Defendant's Petition on two bases: first, the Government claims that Defendant did not exhaust his administrative remedies; and, second, that Defendant's medical condition does not rise to the level of "extraordinary and compelling" reasons warranting a compassionate release.  ECF 62.

Turning first to the issue of whether Defendant must exhaust his administrative remedies before filing a motion for compassionate release pursuant to § 3582(c)(1)(A)(i), the Government cites to *United States v. Raia*, for the proposition that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement is required with respect to Defendant's Petition.  ECF *Raia,* 954 F.3d 594, 597 (3d Cir. 2020).   Defendant's position is that even if he has not exhausted his administrative remedies, "[t]hese are not ordinary times.   The Court may waive these administrative exhaustion requirements, and should do so here."   ECF 61, p. 17.   Defendant further postulates that "it would be ridiculous and dangerous to require [Defendant] to go through the Bureau of Prisons appeals process in order to satisfy the exhaustion requirement." Id., p. 20.

The Court recognizes that currently FCI Elkton, where Defendant is housed, is experiencing an outbreak of the coronavirus, with at least 286 inmates presently testing positive for Covid-19, and 9 inmate deaths are being attributed to the coronavirus to date. Elkton also reports that 116 inmates and staff have recovered.[4]

The Court also notes that risk of contracting Covid-19 currently exists everywhere in the community – Allegheny County included.[5]   Federal Correction Institutions, along with this

---

4. https://www.bop.gov/coronavirus/ (last visited May 28, 2020).

5. Defendant's Motion suggests that should Defendant be released, he would return "home" to live with

Court and a myriad of other local authorities, are taking the necessary steps and precautions to help stop the spread of the COVID-19 virus among the prison population, including those individuals detained in Elkton FCI.

In this case, Defendant presented evidence to this Court of his request to the warden at Elkton.  See case no. 15-cr-211 at ECF 73-7, and case no. 19-cr-053 at ECF 61-7.  According to this document attached to each of his Motions in each case, Defendant wrote directly to the Warden at Elkton on April 19, 2020, requesting release under the CARES Act.  Id.  In so doing, he noted his medical conditions and indicated that he had a place to live in Tarentum, Pennsylvania.  Id.  In response to Defendant's request, the Warden issued a written response, dated April 24, 2020, noting that Defendant "did not meet the criteria for placement on home confinement under the CARES Act due to [his] PATTERN risk score being high."  Id.

Without commenting as to whether this exchange between Defendant and the Elkton Warden satisfies the exhaustion requirement given the situation the Coivd-19 pandemic has caused, this Court will instead, focus on the substantive reason Defendant provides suggesting he should be released or have his sentence reduced.   In a nutshell, Defendant claims that if he contracts the coronavirus, then he may have a more difficult time recovering from the virus, because he is a diabetic.

Defendant's concerns about the potential to contract coronavirus while incarcerated at Elkton, would also present while serving home detention at his mother's home in Allegheny County.  In addition this Court must consider: (1) the comments made by the Warden

---

his mother in Tarentum, Pennsylvania, which is a borough located within Allegheny County.  ECF 61, p. 3.

concerning Defendant's "risk score," (2) and to the Government's notations in its Responses to the Defendant's Motions, wherein the Government outlines all of Defendant's bank fraud crimes dating back to 2002 (15-cr-211 at ECF 68, p. 12 and case no. 19-cr-053 at ECF 58, p. 12), and (3) the Presentence investigation Reports in both cases which further prove the nearly two decade span of serial fraud crimes perpetuated by Defendant.   In fact, Defendant committed the 2019 bank fraud crime[6] which caused him to be sentenced to 48 months imprisonment at Elkton FCI, while he was supervised release for another bank fraud crime which he committed in 2015.[7] Defendant has been incarcerated since February of 2019, and was remanded to BOP custody at the time of sentencing on September 11, 2019; thus, he has served less than half of his 48-month imprisonment term.

Given the Defendant's lengthy history of bank fraud and other fraud related crimes which Defendant has consistently perpetuated from the time he was age 21 through age 40, his criminal history score is a "VI" – the highest possible criminal history score achievable.   Defendant attained this criminal history score due to his 14 previous criminal convictions all of which involved fraud.

In conclusion, given Defendant's extensive recidivist history, the fact that he committed his most recent fraud crime while on supervised release for a prior fraud crime, given that he has only completed about one-third of his 48-month sentence, and considering that there is a risk of contracting Covid-19 while living in the community of Allegheny County, the Court will deny Defendant's Motions.

---

6. *See* case no. 19-cr-053.

7. *See* case. no. 15-cr-211.

AND NOW, this 29th day of May, 2020, the Court hereby ORDERS that Defendant's Motions for Release/Reduced Sentence pursuant to CARES Act or First Step Act from Custody (case number 15-cr-211 at ECF 73, and case number 19-cr-053 at ECF 61) are DENIED.

SO ORDERED this 29th day of May, 2020.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record